IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

OFFICE OF MENTAL RETARDATION AND
 DEVELOPMENTAL DISABILITIES, on behalf
 of Kellye A. Duncan,

                              Plaintiff,

             vs.                                    Civil Action No.
                                                    6:04-CV-0386 (DNH/DEP)

JO ANNE B. BARNHART, Commissioner
of Social Security Administration,

                              Defendant.

_____

APPEARANCES:                         OF COUNSEL:

FOR PLAINTIFF:

HON. ELIOT SPITZER                   DAVID B. ROBERTS, ESQ.
Attorney General of the              ROGER W. KINSEY, ESQ.
State of New York
The Capitol
Albany, New York 12224

FOR DEFENDANT:

HON. GLENN T. SUDDABY                WILLIAM H. PEASE, ESQ.
United States Attorney for the       Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL            BARBARA L. SPIVAK, ESQ.
Social Security Administration       Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278                   ARTHUR SWERDLOFF, ESQ.
                                     Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>            REPORT AND RECOMMENDATION</u>

The New York State Office of Mental Retardation and Developmental Disabilities ("OMRDD"), acting in a representative capacity on behalf of Kellye A. Duncan ("claimant"), a mentally disabled patient residing in a facility operated under its auspices, has commenced this proceeding seeking judicial review of an agency finding that claimant is not eligible to receive supplemental security income ("SSI") benefits under the Social Security Act.  Central to the disputed determination is an agency finding that monies transferred from the claimant to a representative of the OMRDD, and set aside in a supplemental needs account for use to Ms. Duncan's benefit, is not excludable when considering whether she exceeds the threshold, maximum financial resources ceiling above which she does not qualify for receipt of SSI benefits.  Plaintiff asserts that the supplemental needs account is properly excludable as a resource for purposes of entitlement to such benefits, since it is in the nature of a trust established for her benefit by a duly recognized representative payee authorized to receive her Social Security payments.

Plaintiff's complaint calls upon the court to interpret a relatively simple statutory provision and to discern whether, in its use of the term "legal guardian", Congress intended to encompass within its coverage a representative payee who has funded a special needs account, though without formal designation as a legal guardian for the account beneficiary. Because I find that the intended meaning of the disputed language is plain from its wording, and that acceptance of plaintiff's argument would result in improper judicial redrafting of the statute to expand its intended scope, I recommend that defendant's motion for judgment on the pleadings be granted, and plaintiff's complaint dismissed.

I.      BACKGROUND

Claimant Kellye A. Duncan is mentally retarded, and resides in a facility located in Rome, New York, and operated by the Central New York Developmental Disabilities Service Office ("CNY DDSO"), an adjunct of the OMRDD.  Administrative Transcript (Dkt. No. 3) at pp. 77, 80.[1] Plaintiff asserts – and defendant does not argue otherwise – that the claimant is disabled within the meaning of the Act and applicable

---

[1]      Portions of the administrative transcript (Dkt. No. 3), consisting of evidence and proceedings before the agency, and filed by the Commissioner together with her answer, will be cited herein as "AT ___."

regulations, and thus entitled to receive monthly SSI benefits subject to meeting governing financial eligibility criteria discussed below.  AT 74.

In October of 2001 Stephen Smits, Director of the CNY DDSO, applied to the Social Security Administration for recognition as a representative payee designated to receive the claimant's SSI benefits. AT 77-80.  That request was granted, and Smits was subsequently appointed as a representative payee for purposes of managing benefits received by Ms. Duncan from that agency.[2,3]

––––––––––––––––––––

[2]    Under the agency's regulations,

[a] representative payee has a responsibility to – –

(a) Use the payments he or she receives only for the use and benefit of the beneficiary in a manner in and for the purposes he or she determines, under the guidelines in this subpart, to be in the best interests of the beneficiary;

(b) Notify [the agency] of any event that will affect the amount of benefits the beneficiary receives or the right of the beneficiary to receive benefits;

(c) Submit to [the agency], upon [its] request, a written report accounting for the benefits received; and

(d) Notify [the agency] of any change in his or her circumstances that would affect performance of the payee responsibilities.

20 C.F.R. § 404.2035.

[3]    The record does not contain any document formally designating or recognizing Director Smits as a representative payee authorized to receive claimant's SSI benefits.  From the record, however, there is no reason to question that such a

At some point in time Director Smits executed a document, entitled "Kellye Duncan Supplemental Need Agreement".[4]  AT 96-97, repeated at AT 123-24.  While that document is described as an agreement, it was executed only by Smits, with no signature by or on behalf of the claimant. *Id.*  Under its terms, the agreement provides for the transfer of $6,000 from a personal savings account of the claimant to Smits, on behalf of the OMRDD Commissioner, for establishment of an account "to be used for the exclusive benefit of Kellye Duncan" for "'supplemental needs' as envisioned by [N.Y. Estates Powers & Trusts Law §] 7-1.12 and Social Services Law [§] 366[.] "[5,6] AT 123-24.  The agreement further specifies that upon the claimant's death, the proceeds of the special needs account

---

designation was conferred by the agency.

[4]     The document itself does not indicate the date of its execution, although in its memorandum plaintiff asserts that the agreement was entered into on July 17, 2001.  *See* Plaintiff's Memorandum (Dkt. No. 8) at 2.

[5]     In its brief, the OMRDD intimates that all or some of the monies contained in that personal savings account represent the proceeds of a lump sum payment to the claimant for retroactive SSI benefits.  *See* Plaintiff's Memorandum (Dkt. No. 8) at 2.  While defendant does not challenge this assertion, there is nothing in the record to either substantiate the claim or from which one can ascertain what portion of the account's proceeds was derived from that source.

[6]     Under the two sections referenced in the agreement, supplemental needs can include food, clothing, shelter or health care, N.Y. Est. Powers & Trusts Law § 7-1.12(a)(5)(ii) (McKinney 2002), or personal expenses, N.Y. Soc. Serv. Law § 366 (2)(a)(10)(i)(A) (McKinney 2003).

will revert to the State to the extent of the value of all Medicaid paid on

behalf of the claimant.  AT 96-97.  The manifest purpose for entering into

the agreement was to shield the accomplished SSI benefits received by

the claimant in lump sum form, without having to expend them within the

controlling six month window period, and reduce the contents of her

personal bank account to less than $2,000 in order to qualify her for

ongoing receipt of SSI benefits.[7]

Upon examining the matter, representatives of the Social Security

Administration determined that claimant's special needs account was not

properly excludable as a resource for purposes of determining her

entitlement to SSI benefits.[8]  *See*, *e.g.*, AT 81.  That determination was

later upheld, following a request for reconsideration filed by Director Smits

on claimant's behalf, AT 82-83, by decision rendered on or about January

22, 2002.  AT 86-88.

A hearing was conducted by Administrative Law Judge ("ALJ")

Franklin T. Russell on March 11, 2003 to address claimant's application

---

[7]     At the relevant times, SSI lump sum awards such as those paid to the claimant were exempt from inclusion as resources, for purposes of SSI eligibility, for a period of six months.  20 C.F.R. § 416.1233(a).  That period has since been extended to nine months.  *Id.*

[8]     The financial eligibility requirements for SSI benefits are discussed later in this opinion.  *See* p. 10, *post*.

for SSI benefits.  AT 131-42.  Attending the hearing on behalf of the

claimant was James Moragne, a District Manager with the New York

OMRDD.  AT 131.  Following the hearing ALJ Russell issued a decision,

dated March 27, 2003, concluding that the $6,000 contained in claimant's

special needs account was properly considered as a resource for

purposes of determining her eligibility for SSI benefits.  AT 74-76.  The

ALJ's decision became a final determination of the agency when, in

January of 2004, the Social Security Administration Appeals Council

denied claimant's request for review.  AT 62-64.

## II.    PROCEDURAL HISTORY

Plaintiff commenced this proceeding on April 6, 2004.  Dkt. No. 1.

Issue was thereafter joined by the Commissioner's filing on July 19, 2004

of an answer, accompanied by an administrative transcript of the

proceedings and evidence before the agency.  Dkt. Nos. 2, 3.  With the

filing of plaintiff's brief on January 31, 2005, Dkt. No. 8, and that on behalf

of the Commissioner on April 13, 2005, Dkt. No. 10, the matter is now ripe

for determination, and has been referred to me for the issuance of a report

and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(d).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Scope of Review

    A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, her decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp.2d at 148.  If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13

F. Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

Plaintiff's challenge to the Commissioner's determination does not find fault with any of the factual determinations made by the ALJ, and thus does not implicate the substantial evidence test normally predominant in judicial review proceedings under section 405(g).  Instead, the focus of the plaintiff's argument is upon whether, in arriving at her determination, the Commissioner applied the proper, controlling legal principles.

B.    SSI Eligibility

The SSI benefits program, which is governed principally by Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, was designed by Congress to provide necessary financial resources to needy aged, blind, and disabled individuals who meet certain statutory income and resource criteria.  42 U.S.C. § 1382(a); *see Randall v. Broome County Soc. Servs.*, 93-CV-1539, 1995 WL 236254, at *3 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.).  Enactment of the SSI program was undertaken "to assure a minimum level of income" for those qualifying aged, blind and disabled "who do not have sufficient income and resources to maintain a standard of living at the Federal minimum income level."  20 C.F.R. § 416.110.

In light of this expression of intent to ensure that qualifying aged and disabled individuals are able to live above an established floor level of subsistence, both the Act and its implementing regulations set forth certain financial prerequisites for SSI eligibility.  *See, e.g.*, 42 U.S.C. § 1382(a)(1)(B)(ii); 20 C.F.R. § 416.1205.  Under those provisions, to receive SSI benefits an otherwise qualified disabled person may not have resources which exceed certain specified maximum dollar amounts; for individuals, that maximum dollar amount is, and was at the relevant times, $2,000.  42 U.S.C. § 1382(a)(3)(B); 20 C.F.R. § 416.1205.  By regulation the term "resources" is defined as "cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his or her support and maintenance."  20 C.F.R. § 416.1201(a).

The statutory framework under which the claimant's special needs account must be analyzed, in order to determine whether it is properly includable as such a resource, is codified in 42 U.S.C. § 1396p(d).  Under that section, such an account may be exempted from treatment as a resource if it constitutes

> [a] trust containing the assets of an individual
> under age 65 who is disabled . . . and which is

established for the benefit of such individual by a
parent, grandparent, legal guardian of the
individual, or a court if the State will receive all
amounts remaining in the trust upon the death of
such individual up to an amount equal to the total
medical assistance paid on behalf of the individual
under a State plan under this subchapter.

42 U.S.C. § 1396p(d)(4)(A).[9]  As is evident from its face, under this

provision a fund must meet three criteria for excludability as a resource,

including that 1) it is for a disabled individual under the age of sixty-five; 2)

it is established by a parent, grandparent, legal guardian, or a court; and

3) its proceeds revert to the State, up to the amount of paid medical

assistance under Medicaid, upon the death of the beneficiary.  *Id.*

The ALJ concluded, and the Commissioner concedes, that the first

and third of these factors are satisfied under the facts of this case.  The

court's focus, then, is appropriately upon whether Director Smits, as a

representative designated to receive SSI lump sum benefits on behalf of

the claimant, though not having formally been appointed as such, can be

---

[9]     While claimant's special needs account is not denominated as a trust, it
has many of the attributes of a trust and appears to fall within the definition of the term
"trust" set forth in the Social Security Act.  *See* 42 U.S.C. § 1396p(d)(6) ("The term
'trust' includes any legal instrument or device that is similar to a trust but includes an
annuity only to such extent and in such manner as the Secretary specifies.").  As such,
the agreement has been treated by both parties as subject to analysis under 42 U.S.C.
§ 1396p(d)(4)(A).

viewed as her legal guardian for purposes of the governing statute.

The starting point in any case involving statutory construction is consideration of the words of the enactment itself.  *Caminetti v. U.S.*, 242 U.S. 470, 485, 37 S.Ct. 192, 194 (1917) ("[i]t is elementary that the meaning of a statute must . . . be sought in the language in which the act is framed, and if that is plain . . . the sole function of the courts is to enforce it according to its terms"); *see also U.S. v. Ford*, 435 F.3d 204, 210 (2d Cir. 2006); *U.S. v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000); *In re Adler, Coleman Clearing Corp.*, 263 B.R. 406, 474 (S.D.N.Y. 2001). "Interpretation is the art of finding out the true sense of any form of words, that is the sense which their author intended to convey[.]"  2A Sutherland, Statutory Construction § 48A:15 (6th ed.) (citations and internal quotations omitted).  In examining the relevant statutory language, the court must determine whether the wording on its face is unambiguous, and the meaning is sufficiently clear to leave no room for doubt or further interpretation.  *Adler*, 263 B.R. at 474.  If the meanings of the words employed in the statute are plain and unambiguous, then judicial inquiry is complete.  *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254, 112 S.Ct. 1146, 1149 (1992).

The result in this case turns upon interpretation of the term "legal guardian", as utilized in section 1396p(d)(4).  Unfortunately, this disputed phrase is nowhere defined in the relevant statutory provision.  Since Congress has provided no definition of the term "legal guardian" as utilized in section 1396p(d)(4)(A), the court must look to the "ordinary, common-sense meaning" of the term.  *Dauray*, 215 F.3d at 260 (citing *Harris v. Sullivan*, 968 F.2d 263, 265 (2d Cir. 1992)).  In discerning the meaning ordinarily held with regard to a particular term, the court may consult sources such as dictionaries commonly accepted as authoritative sources.  *Dauray*, 215 F.3d at 260; *Harris*, 968 F.2d at 265.  Moreover, "the meaning of doubtful terms or phrases may be determined by reference to their relationship with other associated words or phrases (*noscitur a sociss*)" and, additionally, "'where general words follow a specific enumeration of persons or things, the general words should be limited to persons or things similar to those specifically enumerated' (*ejusdem generis*)."  *Dauray*, 215 3d at 262 (citing and quoting*, inter alia*, *U.S. v. Turkette*, 452 U.S. 576, 581, 101 S. Ct. 2524, 2527-28 (1981)).

Standing alone, the word "guardian" is susceptible of somewhat varying definitions, and is often accompanied by a descriptive modifier

-13-

which more clearly conveys the author's intended meaning.  According to

one authoritative source, a guardian is "[o]ne who has the legal authority

and duty to care for another's person or property, esp[ecially] because of

the other's infancy, incapacity, or disability.  A guardian may be appointed

for all purposes or for a specific purpose."  Black's Law Dictionary 725

(8th ed. 2004).

Despite this potential ambiguity, when the term "guardian" is coupled

with the additional modifier "legal", its intended meaning is sharply brought

into focus.  Use of the words "legal guardian", in tandem, connotes more

than simply a loose arrangement, including a self-proclaimed or *de facto*

guardianship, instead suggesting the need for more formal recognition,

either by court order or by statute, affixing and governing the relationship

between the guardian and the person whose needs are being cared for.

In its brief, the OMRDD invites the court to judicially relax the

concept of legal guardianship by considering the admittedly appealing

policy arguments advanced in favor of treating an SSI designated payee

as a legal guardian.  Citing 42 U.S.C. § 1396p(d)(4)(B), the State argues

that a special needs account may, under certain circumstances not

presented here, be established and funded by Social Security benefits,

but excludable as a resource for purposes of entitlement to Social Security payments.  The State goes on to argue that this expression of Congressional intent to allow Social Security benefits to be shielded through establishment of a trust, which could then be administered by a representative payee for a disabled person, would be undermined by strict construction of the term "legal guardian" to exclude such a representative payee.  Such arguments, however persuasive, cannot overcome the clear language of the statute.

The plaintiff's argument appears to focus upon who may be authorized under various provisions to establish trusts of the nature now at issue.  In doing so, the OMRDD loses sight of the fact that Congress has narrowed the range of trusts falling within the governing resource exclusion provision by limiting its coverage to trusts established by a parent, grandparent, legal guardian, or the court.  Acceptance of plaintiff's argument would render this second prong of the exclusion test redundant, and thus meaningless.  A court should avoid a statutory construction which renders a material term of the statute under consideration nugatory. *See Hedin v. Thompson*, 355 F.3d 746, 750 (4th Cir. 2004) (citations omitted).

Simply stated, by virtue of its clear and unambiguous terms the relevant statute providing for exclusion of trusts as resources to be considered when determining SSI eligibility applies only to those, including special needs accounts, established by a claimant's parent, grandparent, or a person invested with authority by statute or court order to act as her legal guardian.  Because the claimant's special needs account was not the Commissioner, relying upon plain and unambiguous statutory language, properly included it when determining that the claimant did not meet the financial resources test of eligibility for SSI benefits.

The Commissioner effectively argues that even with a finding of ambiguity surrounding the phase "legal guardian", the court would not be positioned to accept the OMRDD's proposed interpretation.  When disputed language and other traditional canons of statutory construction fail to shed light on the intended meaning of a Congressional enactment, the court may resort to an analysis of the legislative history of the provision under debate.  *Ford*, 435 F.3d at 210; *Dauray*, 215 F.3d at 264. The language now at issue was enacted as part of the Omnibus Budget Reconciliation Act of 1993 ("OBRA"), Pub. L. No. 103-66, 107 Stat. 312 (codified as amended at 42 U.S.C. § 1396p), which became effective on

-16-

August 10, 1993.  H.R. 2264, 103rd Cong. (1993) (enacted).  As originally

introduced into the House of Representatives, the bill which ultimately led

to passage of the OBRA contained language authorizing representative

payees to establish an exempted trust, providing that rules regarding

inclusion of trusts would not apply to "trusts established for the benefit of a

disabled individual by a parent, grandparent, *or other representative

payee* . . . of the individual[.]"  *See* H.R. Rep. No. 103-111, at 208 (1993),

reprinted in 1993 U.S.C.C.A.N. 378, 535 (emphasis added).  The Senate

version, however, was significantly more restrictive, omitting the more

generous representative payee language and instead substituting "legal

guardian" as well as "or a court."  S. 1134, 103rd Cong. (1993).  The fact

that the provision ultimately enacted excluded the less restrictive language

contemplated under the House Bill confirms a Congressional intent to

adopt the more restrictive "legal guardian" language and not to exclude

from coverage the term "designated payee."  "'Few principles of statutory

construction are more compelling than the proposition that Congress does

not intend *sub silentio* to enact statutory language that it has earlier

discarded in favor of other language.'"  *INS v. Cardoza-Fonseca*, 480 U.S.

421, 442-43, 107 S. Ct. 1207, 1219 (1987) (quoting *Nachman Corp. v.*

*Pension Ben. Guaranty Corp.*, 446 U.S. 359, 392-93, 100 S. Ct. 1723, 1742 (1980)).

In support of its position, the OMRDD points to portions of the Social Security Administration's Program Operations Manual System ("POMS") relating to trusts.  Focusing on the portion of the POMS setting forth criteria for establishing trusts, the OMRDD notes that the term "grantor" is defined in such a way as to include any person "legally empowered to act on [the trust beneficiary's] behalf (e.g., a legal guardian, representative payee for Title II/XVI benefits . . .)[.]"  POMS § SI 01120.200.B.2.  A similar definition of grantor obtains with regard to establishment of special needs accounts.  *See* POMS § SI ATL01120.201.A.

It should be noted that the POMS, as an interpretative manual authored by an agency with recognized expertise and oversight responsibilities for administration of the Social Security program, while entitled to deference, does not carry with it the force of law, and certainly cannot override clear, contrary statutory language.  *See Shiner v. Sullivan*, 793 F.Supp. 1257, 1261 (D. Vt. 1991).  In any event, it does not necessarily follow from the fact that a representative payee is authorized under the POMS to establish a trust or a special needs account, that such

-18-

a trust or account is properly excludable as a resource for purposes of qualifying for SSI benefits.  Indeed, another portion of the POMS which directly relates to exclusion of such resources tracks the language of section 1396(d)(4), noting that to qualify under the special needs exclusion the trust must have been established by the disabled individual's parent, grandparent, legal guardian, or a court.  POMS § SI 1120.203.B.(1)(a), (1)(e).  The omission of any reference to a representative payee under this section reinforces the court's finding of Congressional intent not to include such persons within the category of those authorized to establish an exempted trust.

In reliance upon pertinent provisions of the N.Y. Mental Hygiene Law governing appointment of guardians for incapacitated persons, the OMRDD also contends that Smits, as the designated representative payee for purposes of receipt of Ms. Duncan's SSI benefits, should be viewed as a *de facto* legal guardian.  Plaintiff bases this argument upon case law suggesting that even when incapacity is established, guardianship should be established under Article 81 of the N.Y. Mental Hygiene Law "only as a last resort, and should not be imposed if available resources or other alternatives will adequately protect the person[.]"  *In re*

*Maher*, 207 A.D.2d 133, 140, 621 N.Y.S.2d 617, 621 (2d Dept. 1994)

(citing Law Revision Comm'n Comments, reprinted in McKinney's Cons.

Laws of N.Y., Book 34A, Mental Hygiene Law § 81.02, 1994 pocket part,

at 241-42); *see also Matter of Lowe*, 180 Misc.2d 404, 405, 688 N.Y.S.2d

389, 390 (Queens County Sup. Ct. 1999) (citing *Maher*).[10]  Plaintiff

maintains that because available resources are defined to include, among

other things, "representative and protective payees," *see* N.Y. Mental

Hygiene Law § 81.03(e), the New York Legislature has in essence imbued

the term representative payee with the fiduciary attributes equivalent to

those of a legal guardian.

When deciding to settle upon language which includes only a limited

number of categories of persons authorized to establish trusts which

would be exempt as resources without expanding beyond the term legal

guardian, Congress did not focus upon the laws of any one particular

state, including those applicable in New York, but instead intended the use

of that term to apply in all jurisdictions.  Accordingly, the fact that the New

_____

[10]      Under the New York Mental Hygiene Law, the court may appoint a
guardian for a person who meets the statutory definition of incapacity if deemed
"necessary to provide for the personal needs of that person, including food, clothing,
shelter, health care, or safety and/or to manage the property and financial affairs of
that person[.]" N.Y. Mental Hygiene Law § 81.02(a)(1); *see In re Janczak*, 167 Misc.2d
766, 769-70, 634 N.Y.S.2d 1020, 1022-23 (Ont. County Sup. Ct. 1995).

York State Legislature might view a representative payee as the functional

equivalent of a legal guardian is legally irrelevant.  In any event, even were

the court to conclude the term "legal guardian" could admit of an

interpretation which would include *de facto* guardians, Smits nonetheless

would not qualify in this case.  Under the Mental Hygiene Law, absent a

finding "that no other person or corporation is available or willing to act as

guardian, or to provide needed services for the incapacitated person,"

individuals falling within the following categories are expressly precluded

from serving in that capacity:

> 1. one whose only interest in the person alleged
>    to be incapacitated is that of a creditor;
>
> 2. one other than a relative, who is a provider, or the
>    employee of a provider, of health care, day care,
>    educational, or residential services to the incapacitated
>    person, whether direct or indirect.

N.Y. Mental Hygiene Law § 81.19(e).  Accordingly, Smits, as an employee

of the OMRDD, is expressly conflicted from serving as a guardian under

section 81.02, absent a finding that no other person is willing and able to

act as such.  *In re Patrick* ("BB"), 284 A.D.2d 636, 638-39, 725 N.Y.S.2d

731, 734 (3d Dept. 2001).

## IV.   SUMMARY AND RECOMMENDATION

The plain language of the governing statute requires that to be excludable as a resource for purposes of SSI eligibility, a trust must be established, *inter alia*, by a legal guardian.  Since the disputed special needs account, which for purposes of this action has been treated as in the nature of a trust, was established not by claimant's legal guardian, but instead by a designated payee acting on her behalf, the Commissioner properly concluded that the account should be regarded as a resource for purposes of determining her eligibility to receive SSI benefits.  While plaintiff makes an appealing argument that this result cannot be harmonized with overriding Congressional intent and policy considerations in favor of encouraging management of disabled persons' Social Security benefits by representative payees, such a modest, potential disconnect does not authorize judicial redrafting of otherwise clear and unambiguous legislation.  Accordingly, it is hereby

RECOMMENDED that defendant's motion for judgment on the pleadings be GRANTED, the Commissioner's determination AFFIRMED, and plaintiff's complaint in this action DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties may file written objections to the foregoing report.  Such

-22-

objections shall be filed with the Clerk of the Court within TEN days.

FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e),

72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of

this Report and Recommendation upon the parties by regular mail.


Dated:      June 16, 2006
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge


G:\socialsecurity\omrddduncan.wpd